

Signed: December 20, 2005

DO NOT PUBLISH

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. 05-40438 JK |
| | Adv. No. 05-4247 |
| CHL MORTGAGE GROUP, INC., | Chapter 7 |
| Debtor. / | |
| JOHN T. KENDALL, Trustee, | |
| Plaintiff, | |
| vs. | |
| ACCESS LENDING CORPORATION, et. al., | |
| Defendants. / | |
| and related cross-actions. / | |

### DECISION: MOTIONS FOR SUMMARY JUDGMENT

The plaintiff in this adversary proceeding is John T. Kendall ("Kendall"), trustee in bankruptcy of the estate of CHL Mortgage Group, Inc., the above debtor ("CHL"). The defendants are entities that may claim a lien on or other interest in one or more of the various parcels of real property that are included in CHL's

Decision

bankruptcy estate, or the sales proceeds thereof.  By his First Amended Complaint, Kendall seeks a determination from this court that none of the defendants have any interest in any of such real properties or sales proceeds, and thus, that the defendants are, at best, general unsecured creditors.

Kendall named some 28 parties as defendants, two of which, Access Lending Corporation ("Access") and Impac Funding Corporation ("Impac"), have moved for summary judgment.  By its motion, Access seeks an order providing that it holds either a resulting trust interest, constructive trust interest, or equitable lien on the sales proceeds of the properties situated at 501 Linford, San Ramon, California (the "Linford Property") and 9284 Broadmore, San Ramon, California (the "Broadmoor Property").  Impac seeks similar relief on similar theories as to the Linford Property.  Kendall opposes the motions, and has filed a cross-motion for partial summary judgment against Access and Impac.[1]

The court holds that: (a) the properties at issue are not subject to a resulting trust in favor of Access or Impac, and (b) Access and Impac have established their entitlement to imposition of a constructive trust on the properties at issue as a matter of California law, notwithstanding CHL's bankruptcy case. For the reasons discussed at the end of this memorandum, however, the court expresses no opinion as to whether Kendall might be able

---

[1] Defendants Saxon Mortgage Services, Inc. and Gateway Bank, creditors herein, also oppose the motions filed by Access and Impac.

Decision 2

to utilize Bankruptcy Code § 544(a)(3) (trustee's power as a bona fide purchaser of real property under state law) to defeat such constructive trusts.

A. <u>Background</u>

CHL was in the business of originating loans secured by real property, and selling the loans to institutional investors and lenders. On February 2, 2005 several creditors filed an involuntary chapter 11 petition against CHL. Thereafter, this court entered its order for relief, soon followed by an order converting the case to chapter 7.

After his appointment as chapter 7 trustee, Kendall learned that CHL had been engaged in a number of fraudulent transactions. In several such transactions, CHL placed record title to a parcel of real property in the name of a person that had no claim of ownership, and then generated a promissory note in favor of CHL and deed of trust appearing to bear the signature of such person. CHL would then assign these phony loans to an investor and pocket the assignment proceeds. Access and Impac are among the victims who purchased phony loans from CHL.

1. <u>The Linford Property</u>. For purposes of the present motion, the facts are undisputed. CHL placed title to the Linford Property in the name of Margo Olson ("Olson"), never intending that Olson have any interest. CHL then generated one or more promissory notes to its order in the sum of $487,950 and several deeds of trust covering the Linford Property. CHL forged Olson's signature to all of these documents, each of which was dated August 23, 2004. On

Decision 3

August 23, 2004, Impac purchased one of these fraudulent loans from CHL for the cash sum of $487,950. On August 27, 2004, Access also purchased a fraudulent loan from CHL for the cash sum of $487,950.[2] In both cases, CHL dissipated the funds.

After the bankruptcy filing, Kendall obtained title to the Linford Property by means of a stipulation with Olson stating that she had no interest and never had any interest in the Linford Property. Thereafter, Kendall sold the Linford Property pursuant to an arrangement under which any claims of creditors of an interest in the Linford Property were transferred to the sales proceeds, which Kendall now holds subject to further order of the court.

2. <u>The Broadmoor Property</u>. The parties agree for purposes of the pending motions that as of July 21, 2004, record title to the Broadmoor Property was in the name of Olson pursuant to a transaction that, whether or not phony, was at least documented as a purchase by Olson of the Broadmoor Property, financed by CHL. On December 23, 2004, CHL assigned to Countrywide Home Loans, Inc. ("Countrywide") a purchase money promissory note to its order in the sum of $487,950 and a deed of trust covering the Broadmoor Property, each dated July 19, 2004 and each purporting to bear Olson's signature. Kendall, Access, and Impac concede for present purposes

---

[2] The loan packages for the loans Access purchased contained numerous additional documents, and are described in more detail in a Declaration dated November 9, 2005 signed by David C. Fleig. The loan packages for the loans Impac purchased contained numerous additional documents, and are described in more detail in a Declaration dated November 14, 2005 signed by Kathy Murray.

Decision 4

that this was another phony loan transaction similar to those described above. Countrywide does not so concede.

Thereafter, as part of what all the parties for present purposes agree was a phony loan transaction to refinance the loan Countrywide had purchased, CHL generated one or more promissory notes in the sum of $479,960 and several deeds of trust, each bearing a date of August 23, 2004 and each bearing Olson's signature forged by CHL. On August 23, 2004, Impac purchased one of these fraudulent loans from CHL for the cash sum of $487,950. On August 27, 2004, Access also purchased such a loan from CHL for the same amount. In both cases, CHL dissipated the funds.

After the bankruptcy filing, Kendall obtained title to the Broadmoor Property by means of a stipulation with Olson stating that she had no interest and never had any interest in the Broadmoor Property. Thereafter, Kendall sold the Broadmoor Property pursuant to an arrangement by which any claims of creditors of an interest in the property were transferred to the sales proceeds, which Kendall now holds subject to further order of the court.

Countrywide contends that it is not bound by Kendall's stipulation with Olson, or by Olson's concession that she never owned the Broadmoor Property. Countrywide does not oppose Access's motion to the extent Access claims an interest in the sales proceeds

Decision 5

superior to Kendall's, but because of its own conflicting claim, opposes distribution of the Broadmoor sales proceeds to Access.[3]

B. Discussion

1. Summary Judgment.

"Summary judgment is properly granted when there is no genuine issue of material fact and moving party is entitled to judgment as a matter of law." Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1250 (9th Cir. 1982), cert. denied, 459 U.S. 1227 (1983).

Under Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56, the court may grant summary judgment or partial summary judgment if there is no genuine issue of material fact, and the movant is entitled to the requested judgment as a matter of law. In ruling, the court must view the evidence in the light most favorable to the nonmoving party. The court may not weigh the evidence, or determine the truth of disputed matters asserted, but must only determine whether there is a genuine issue for trial. See, e.g., Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994); Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

---

[3]At this point in the proceedings, Countrywide has not moved for summary judgment against any other party, and no other party has sought summary judgment against Countrywide. Thus, Countrywide's participation in the motions now before the court is limited to its opposition to Access's motion regarding the Broadmoor Property to the extent Access seeks possession of the sales proceeds Kendall holds, and opposition to Kendall's motion.

Decision 6

2. <u>Contentions of the Parties</u>.

The parties for the most part acknowledge that many of the creditors in this bankruptcy case are victims of CHL's fraud. The crux of the dispute, and perhaps the major issue in this bankruptcy case, is whether the proceeds Kendall holds and acquires from sales of real property should be distributed ratably among all the creditors without regard to their particular expectations as to, or investments in, particular loans and specific parcels of real property.

Access and Impac do not argue that the forged notes and deeds of trust they purchased were effective to create any contractual liens. Rather, they argue that the facts mentioned above entitle them to a resulting trust, constructive trust, or equitable lien under California law in the properties against which they intended to lend, and that any such trust interest or lien is enforceable in this bankruptcy case. Kendall's argument, in a nutshell, is that Access and Impac have not established grounds for the relief they seek, and that "[e]ven if state law would favor imposing some kind of equitable lien or constructive or resulting trust between the parties as a remedy for wrong, . . . federal bankruptcy law's policy of equal distribution mandates . . . a 'different result'".[4]

3. <u>Resulting Trust</u>.

Whether the properties at issue are or should be subject to a resulting or constructive trust depends as an initial matter on

---

[4] Kendall's Response dated November 30, 2005, pp. 5-6.

Decision 7

state law. In re North American Coin & Currency, 767 F.2d 1573, 1575 (9th Cir. 1985); In re Sale Guaranty Corporation, 220 B.R. 660, 664 (9th Cir. BAP 1998), aff'd 199 F.3d 1375 (9th Cir. 2000). State law, however, must be applied in a manner consistent with the provisions and policies of federal bankruptcy law. North American Coin, 767 F.2d at 1575-76. The court's first step, then, is to look to California law to determine whether the properties at issue are subject to a resulting trust in favor or Access or Impac.

"A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest in the property." Lloyds Bank California v. Wells Fargo Bank, 187 Cal.App.3d 1038, 1043 (1986). "When the transfer of property is made to one person, and the purchase price is paid by or for another, a trust will ordinarily be presumed to result in favor of the person by or for whom the purchase price is paid." Johnson v. Johnson, 192 Cal.App.3d 551, 556 (1987). A resulting trust has been termed an "intention-enforcing" trust, to distinguish it from the other type of implied trust, the constructive or "fraud-rectifying" trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them. American Motorists Ins. Co. v. Cowan, 127 Cal.App.3d 875, 884-85 (1982) (citations omitted).

Here, the facts do not fit the pattern of a resulting trust. CHL obviously did not intend for Access or Impac to have a deed of trust on any properties; it intended to defraud them by selling them

Decision                                8

worthless forged documents. And CHL certainly did not intend to
sell Access or Impac a loan; there was no loan to sell as CHL well
knew. It follows that Access and Impac are not entitled to a
resulting trust to implement the intention of the parties.

None of the cases cited by Access or Impac are to the contrary.
Sale Guaranty Corporation, which Access and Impac both cite, is an
example of a typical facts justifying imposition of a resulting
trust. In Sale Guaranty Corporation, owners of real property had
conveyed the debtor title to their parcels, intending that the
debtor would hold title only as an "accomodator" in connection with
a contemplated tax-free exchange. 220 B.R. at 662. None of the
parties to the transactions at issue intended for the debtor to have
any beneficial interest in the properties conveyed to it. Under
these facts, the BAP affirmed the bankruptcy court's ruling that the
properties were subject to a resulting trust enforceable against the
debtor's trustee in bankruptcy.

Matter of Torrez, 63 B.R. 751 (9th Cir. BAP 1986), aff'd 827
F.2d 1299 (9th Cir. 1987) presents another example of a typical
resulting trust. In Torrez, the original owners of real property,
the parents of one of the debtors, placed title in the debtors so
that the original owners could receive an additional allotment of
water from the local irrigation district. Id. at 752. They did not
intend for the debtor to obtain any beneficial interest.
Thereafter, the debtors transferred title to a third party. After
their bankruptcy filing, the debtors sought to quiet title as
against the third party and the parents. The BAP held that the

Decision 9

property was subject to a resulting trust in favor of the parents. Id. at 754-55.

In the above cases, a resulting trust was imposed to give effect to the inferred intention of the parties as to title. Neither these cases, nor the others cited by Access and Impac, involved a situation where a resulting trust was imposed in favor of a transferee, here Access or Impac, when the transferor, here CHL, did not intend the transferee to obtain any interest in the subject property.

The court holds that the properties at issue are not subject to a resulting trust in favor of Access or Impac.

4. Constructive Trust.

The essence of the theory of constructive trust under California law is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing. Martin v. Kehl, 145 Cal.App.3d 228, 237 (1983); Nevarez v. Nevarez, 202 Cal.App.2d 596, 602 (1962). See also California Civil Code §§ 2223 and 2224.[5] As the California Supreme Court stated in Day v. Greene, 59 Cal.2d 404, 411 (1963):

---

[5]Cal. Civil Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Section 2224 states that "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Decision                              10

> [T]he imposition of a constructive trust is used to prevent unjust enrichment or to compel restoration of property by one who is not justly entitled to it. The usual situation in which the relief is granted is found in cases where the substantive basis of the action is that the property has been obtained through actual fraud . . . .

Under Cal. Civil Code §§ 2223 and 2224 and the case law applying them, a constructive trust may be imposed where the following three conditions are satisfied: (1) the existence of a res (property or some interest in property); (2) the right of a complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it. See, e.g., Communist Party of the U.S. v. 522 Valencia, Inc., 35 Cal. App. 4th 980, 990 (1995).

Here, Access and Impac have established their entitlement as a matter of California law to a constructive trust in the two properties. They expended money in good faith to acquire what they believed to be legitimate loans secured by the properties at issue. The documentation and form of the transaction were standard. Instead of receiving the deeds of trust for which they had bargained, they received forged documents bearing the name of a record title holder that had no legitimate interest in the property. Under these circumstances, CHL, which presumably was the actual beneficial owner at the time of the bankruptcy and which was responsible for the fraud, was not entitled to hold the properties free of any interest in favor of Access or Impac.

Kendall acquired his interest in the properties at the date of the petition pursuant to Bankruptcy Code § 541(a). Therefore,

Decision 11

Kendall acquired what CHL owned, in this case, a claim to real property subject to imposition of a constructive trust in favor of Access and Impac.

The foregoing, however, does not fully resolve the constructive trust issue. As the Ninth Circuit has observed, in a case where no court has imposed a constructive trust prior to bankruptcy, and thus, where constructive trust is an inchoate remedy at the date of bankruptcy, a court must "act very cautiously in exercising . . . a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws." North American Coin & Currency, 767 F.2d at 1575.

Here, the court believes that imposition of a constructive trust would not run afoul of any countervailing policies of bankruptcy law. At the date of the petition, record title to the properties was subject to phony deeds of trust that represented, in actuality, funds that Access and Impac had advanced and which CHL received and benefitted from. Absent a constructive trust, the losses Access and Impac suffered become the gain of other creditors at their expense.

The cases cited by Kendall are inapplicable under the facts here. In North American Coin & Currency, the Ninth Circuit upheld the ruling below that a constructive trust should not be imposed on the property at issue. In doing so, however, the court emphasized that there was no evidence in the record that the debtor had

Decision                                    12

committed any fraud. Id. at 1576. The court did acknowledge, however, that "[b]ankruptcy trustees have been held to have no interest in property acquired by fraud of bankrupts, as against the rightful owners of property . . . The principle underlying this rule is that the creditors should not benefit from fraud at the expense of those who have been defrauded." Id.

Other cases cited by Kendall involved a situation where the constructive trust claimant in the bankruptcy court had failed to properly perfect its lien on property intended to serve as security for a debt, and where the court declined to remedy the perfection defect by imposing a constructive trust. See, e.g., In re Lewis W. Shurtleff, Inc., 778 F.2d 1416 (9th Cir. 1985) (failure to record warranty deed); In re Foam Systems Co., 92 B.R. 406 (9th Cir. BAP 1988), aff'd (table decision) 893 F.2d 1338 (9th Cir. 1989) (failure to perfect security interest in funds on deposit supplied as advance payment for materials).

In re Markair, Inc., 172 B.R. 638 (9th Cir. BAP 1994), also cited by Kendall, is inapplicable. In Markair, a party that had repaired an aircraft engine claimed a constructive trust interest in certain insurance proceeds in which it had no contractual interest and on which it did not rely for payment. No fraud by the debtor was involved. Here, Access and Impac had looked to the real property for payment, and fraud by the debtor was involved.

In re Carmel of St. Joseph, 237 B.R. 155 (9th Cir. BAP 1999) is also easily distinguished. In St. Joseph, the constructive trust claimant had donated money to his church to permit the debtor to

Decision                                                         13

acquire land on which to build a monastery. Thereafter, the debtor acquired several parcels of land, but built the monastery with funds from another source. After the debtor's bankruptcy, the donor sought to impose a constructive trust on the property the debtor had purchased with the donated funds, alleging that the debtor had not complied with certain conditions to the gift. The BAP affirmed the bankruptcy court's judgment that grounds for a constructive trust on the property were not present. Id. at 158. Again, unlike the case here, there was no fraud by, or unjust enrichment of, the debtor, and no res (the donation was cash) in which the claimant had a special interest.

None of the cases Kendall has cited in opposition to the motions by Access and Impac involved a situation, as here, where the debtor engaged in fraud at the expense of the parties seeking to impose a constructive trust. And none of the cases Kendall cited involved a situation, as here, where the property at issue was used by the debtor as the debtor's vehicle to commit a fraud on the party seeking the constructive trust.

The court holds that under California law, imposition of a constructive trust in favor of Access and Impac on the two properties at issue is an appropriate equitable remedy, notwithstanding CHL's bankruptcy.

Decision 14

5. Bankruptcy Code § 544(a)(3).

The final potential issue that the court believes appropriate to mention[6] is whether Kendall's power as a hypothetical bona fide purchaser of real property under California law, as provided by Bankruptcy Code § 544(a)(3),[7] enables him to defeat the constructive trust remedy that the court holds is available to Access and Impac as a matter of California law. This issue is material because of the Ninth Circuit's decision in In re Tleel, 876 F.2d 769 (9th Cir. 1989), holding that constructive trust claims as to real property

---

[6] Access and Impac raised several additional arguments, e.g., that Access holds a contractual general lien on all the assets of CHL's estate, and that Impac has certain rights as a "holder in due course." The court rejects these arguments, primarily for the reasons advanced by Kendall in his opposing memorandum, and believes no discussion is warranted. As to the equitable lien arguments raised by Access and Impac, the court believes the question is moot because of the conclusions expressed herein.

[7] Bankruptcy Code § 544(a)(3) provides:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— . . .
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Decision                                    15

may be defeated by a bankruptcy trustee's power under Bankruptcy Code § 544(a)(3) in a situation where the trustee does not have actual or constructive notice of the claimant's interest. Id. at 771-72.

As mentioned at the outset of this memorandum, the court does not believe it appropriate to state a conclusion in the present context. First, the trustee's complaint herein does not appear to state any cause of action under Bankruptcy Code § 544(a)(3). Moreover, even if the pleadings before the court could be broadly construed to put the § 544(a)(3) at issue, the parties have not briefed the issue of whether **a bona fide purchaser** under California law could have prevailed as of the petition date against the claims of Access and Impac under the unusual facts present here (although the prudent purchaser rule discussed in Sale Guaranty Corporation, 220 B.R. at 666, would appear to suggest a negative answer, especially if Olson was not in possession of the two properties at the date of the petition. Id.). The court will therefore leave this issue, if raised, for determination at a later date, if necessary.

C. Conclusion.

The court will issue its order granting and denying partial summary judgment to the parties in accordance with this Decision.

**END OF ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

Court Service List

| | |
|---|---|
| Linda Sorensen, Esq.<br>Stromsheim & Associates<br>353 Sacramento Street, Suite 860<br>San Francisco, CA 94111 | Michael R. Pfeifer, Esq.<br>Pfeifer & Reynolds<br>765 The City Drive, Suite 380<br>Orange, CA 92868 |
| Christine A. Scheuneman, Esq.<br>Pillsbury Winthrop Shaw Pittman<br>650 Town Center Drive, 7th Floor<br>Costa Mesa, CA 92626 | Edward P. Sangster, Esq.<br>Kirkpatrick & Lockhart Nicholson<br>  Graham<br>Four Embarcadero Center, 10$^{th}$Fl.<br>San Francisco, CA 94111 |
| Dennis M. Talbott, Esq.<br>Severson & Werson<br>One Embarcadero Center, Ste 2600<br>San Francisco, CA 94111 | Office of the U.S. Trustee<br>1301 Clay Street, Suite 690-N<br>Oakland, CA 94612 |
| Aron M. Oliner, Esq.<br>Buchalter Nemer Fields & Younger<br>333 Market Street, 25th Floor<br>San Francisco, CA 94105 | Mike C. Buckley, Esq.<br>Reed, Smith, Crosby & Heafey<br>1999 Harrison Street, Suite 2400<br>Oakland, CA 94612 |
| William C. Saacke, Esq.<br>Law Offices of McNulty & Saacke<br>25500 Hawthorne Boulevard #2350<br>Torrance, CA 90505-6835 | David E. McAllister, Esq.<br>Pite, Duncan & Melmet<br>525 E. Main Street<br>El Cajon, CA 92022-2289 |
| Robin M. Pearson, Esq.<br>Alborg, Veluva & Epstein<br>200 Pringle Avenue #410<br>Walnut Creek, CA 94596 | Jeffrey H. Lowenthal, Esq.<br>Steyer Lowenthal Boodrookas<br>Alvarez<br>One California Street, 3rd Floor<br>San Francisco, CA 94111 |
| Walter J. R. Traver, Esq.<br>Musick, Peeler & Garrett LLP<br>120 Montgomery Street, Ste 2550<br>San Francisco, CA 94104 | William M. Rathbone, Esq.<br>Gordon & Rees LLP<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111 |